JESÚS MARÍA MAISONAVE, Petitioner and Appellee, v. MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, ET AL., Respondents and Appellants.

No. 6308. Argued June 1, 1933.—Decided June 14, 1933.

*Charles E. Winter, Attorney General,* and *E. Aldrey, Deputy Attorney General,* for appellants. *F. Colón Gordiani* and *J. E. Segarra* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

Jesús María Maisonave applied to the District Court of San Juan for the issuance of a peremptory writ of mandamus to compel the respondents, Manuel V. Domenech and L. A. MacLeod, respectively Treasurer and Auditor of Puerto Rico, to pay to the petitioner the sum of $240.33 as unpaid salary, and the sum of $223.43 withheld from the petitioner by virtue of the Pension Act (No. 104) of 1925 (Session Laws, p. 948).

The petitioner filled the office of internal revenue collector for an approximate period of seven years and was separated

from said office on November 11, 1930, for the following facts which were accepted as true by stipulation of the parties:

"That the defendant applied to his own use several sums belonging to several taxpayers which were to be applied to the payment of receipts due as property taxes, said misappropriated sums amounting to $1,689.52, more or less. (The plaintiff admits that this is the total amount because he has no way of ascertaining the same, and this admission is made exclusively for the purpose of this civil action.) As internal revenue collector, the petitioner failed to deliver to any of his taxpayers the corresponding receipts, and the sums belonged to the taxpayers. By virtue of these facts an information was filed against the defendant in the District Court of Humacao, P. R., to wit, the People of Puerto Rico vs. Jesús María Maisonave, Crim. No. 9690, an offense against the Treasury of Puerto Rico, for having appropriated to himself the sum of $203.33. The plaintiff pleaded guilty and was sentenced to one year's imprisonment in the penitentiary, which he served. All the other charges were dismissed in the District Court of Humacao, P. R."

The respondents refused to pay the sums claimed taking as basis section 124 of the Political Code, which the lower court held inapplicable on the ground that from the facts stipulated by the parties it clearly appeared that the sums misappropriated by the petitioner did not belong to The People of Puerto Rico but to various taxpayers. In consonance with this view, the court a quo rendered judgment commanding the respondents to pay the sums claimed by the petitioner in his petition. The appellants urge that the lower court erred in declaring that the sums appropriated by the petitioner while he was filling the office of internal revenue collector at Yabucoa did not belong to The People of Puerto Rico but to the different taxpayers who entrusted said sums to him, and great importance is attached to the fact that no receipts were issued to the taxpayers for the sums thus paid. There is no doubt that the money paid to the petitioner by certain taxpayers in part payment of their property taxes belonged to said taxpayers, but it is clear in our view that the same ceased to belong to them the

moment they were delivered to the petitioner for the specific purpose of having them applied to the payment of the taxes due. The receipt constitutes evidence of payment; but if the money misappropriated by the petitioner was really delivered to pay the taxes and The People of Puerto Rico admits it to be so, this fact becomes established by as strong and convincing evidence as that of the receipt itself. Moreover, by virtue of these facts which gave rise to a criminal prosecution, the petitioner pleaded guilty of having appropriated the sum of $203.33, an offense against the Treasury of Puerto Rico. The other prosecutions were dismissed. The petitioner himself confesses having defrauded The People of Puerto Rico of certain funds, by virtue of the facts which led to his removal for having appropriated the sum of $1,689.52. We are unable to understand on what basis can the petitioner now deny that said funds belonged to The People of Puerto Rico, after he admitted that fact by a plea of guilty in a criminal proceeding.

Section 124 of the Political Code reads as follows:

"No money shall be paid to any person for his compensation, or to any claimant in satisfaction of any claim or demand against the Insular Treasury, where such person or claimant is indebted and in arrears to The People of Porto Rico and is charged therewith upon the books of the Auditor, until he has accounted for and paid to the Treasurer of Porto Rico all sums for which he may be liable: *Provided,* That upon good cause shown and where the interests of the Insular Government will be benefited thereby, necessary payments of compensation or salary due to persons in arrears to The People of Porto Rico and who are retained in the employment of the Insular Government, may be made upon the recommendation of the Auditor and the approval of the Governor."

The misappropriated sums were not delivered to the petitioner by personal friends or acquaintances to be kept by him in his private capacity. The petitioner himself admits that said sums were delivered by taxpayers to be applied to the payment of their taxes. The word "taxpayer" clearly expresses the relationship existing between the petitioner

and the persons who came to him to pay the above-mentioned sums and such relationship can be no other than that of collector and taxpayer, as it was in the latter capacity that payment was made by the debtors to their legitimate creditor, who was The People of Puerto Rico and not the petitioner.

Under the provisions of section 124, the Treasurer and the Auditor of Puerto Rico are precluded from paying to the petitioner the sums claimed by him, as said provisions specifically prohibit the payment of money to any person for his compensation or claim where such person is indebted and in arrears to The People of Puerto Rico.

Furthermore, even if the embezzled funds belonged to the taxpayers and The People of Puerto Rico had kept the sum claimed by the petitioner in order to reimburse said taxpayers, in view of the character of this case we should not intervene by means of the extraordinary remedy of mandamus to compel the payment to the petitioner of the sum in question.

In *Funk* v. *State,* 166 Ind. 455, 77 N. E. 854, application was made for a writ of mandamus to compel the county treasurer to pay a certain sum. The petitioner was indebted to the Treasury in a certain sum of delinquent taxes, and he resorted to the extraordinary remedy of mandamus in order to compel the payment to him of a certain amount claimed to be due him. The application having been granted by the lower court, on appeal the Supreme Court of Indiana reversed the judgment for the following reasons:

"The proceeding by mandamus was originated at a time when in theory the king presided in person over the Court of King's Bench. It was a prerogative writ, issuing in the king's name from that court, and the proceeding did not partake of the nature of a suit between parties. The character of the proceeding and the nature of the writ has been materially changed in this country, but here the writ of mandamus is still an extraordinary one, and, while not discretionary, it will be issued only by a court

in the exercise of a sound legal discretion. 'It is a remedial process, and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a public fraud. The relator must come into court with clean hands.' "

In *People* v. *Board of Assessors,* 33 N. E. 145, the New York Court of Appeals said:

"The writ of mandamus is not always demandable as an absolute right, and whether it shall be granted or not frequently rests in the discretion of the court. The writ will be granted to prevent a failure of justice, but never to promote manifest injustice. It is a remedial process, and may be issued to remedy a wrong, not to promote one; to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a palpable fraud. The relator must come into court with clean hands, and he cannot invoke this extraordinary remedy, as in this case, to evade the payment of his just portion of a tax by taking and claiming the advantage of a confessed mistake. Even if he had no other remedy he should be left to his own devices to escape the burden honestly resting upon him, and the court may properly refuse to aid him by compulsory process."

In the instant case, if the misappropriated funds belong to The People of Puerto Rico, the petitioner has no right to the sum claimed by him; and if, as he alleges, the same belong to the taxpayers, it is clear that one who avails himself of an office he fills to commit a fraud by appropriating the sum of $1,689.52 and thereafter claims the payment as compensation of an additional sum which in any case he should have applied to the payment of the taxes of the taxpayers thus defrauded, does not come into court with clean hands. As we have said before, the accused was not in a position to deny that this money belonged to The People of Puerto Rico after he had pleaded guilty of defrauding the Treasury by virtue of the same facts.

The judgment appealed from must be reversed and another rendered' instead dismissing the petition in mandamus.

Mr. Justice Aldrey took no part in the decision of this case.